*177 JUDGMENT
MARK BUTTERFIELD, Chief Judge.
Introduction
In this case the President pro tempore seeks a declaratory judgment that he does not have to renominate Executive Directors who were already confirmed under his predecessor, former President Jacob Lonetree, who was removed from office by vote of the General Council. See generally, Jacob Lonetree et. al. v. Robert Funmaker et. al. CV 00-105 (HCN Tr. Ct. Dec. 7, 2000) aff'd, SU 00-16 (HCN S.Ct. March 16, 2001). In this case the HCN Legislature has consented to suit and has waived any conflict of interest the HCN Attorney General might have in representing the President pro tempore in this case. The HCN Legislature is represented in this matter by its Legislative Counsel William Boulware and Michelle Greendeer.
APPLICABLE LAW
HCN CONSTITUTION
ARTICLE III—ORGANIZATION OF THE GOVERNMENT
Section 1. Sovereignty. The Ho-Chunk Nation possesses inherent sovereign powers by virtue of self-government and democracy.
Section 2. Branches of Government. The government of the Ho-Chunk Nation shall be composed of four (4) branches: General Council, Legislature, Executive, and Judiciary.
Section 3. Separation of Functions. No branch of the government shall exercise the powers or functions delegated to another branch.
Section 4. Supremacy Clause. This Constitution shall be the supreme law over the territory and within the jurisdiction of the Ho-Chunk Nation.
ARTICLE V—LEGISLATURE
Section 2. Poivers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(b) To establish Executive Departments, and to delegate legislative powers to the Executive branch to be administered by such Departments, in accordance with the law; any Department established by *178 the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
(c) To constitute a Board of Directors for each Department, except the President shall name the Executive Director, subject to confirmation by the Legislature;
(f) To set the salaries, terms and conditions of employment for all government personnel;
ARTICLE VI—EXECUTIVE
Section 1. Composition of the Executive.
(a) The Executive power of the Ho-Chunk Nation shall be vested in the President of the Ho-Chunk Nation.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of the Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Section 2. Powers of the President. The President shall have the power:
(a) To execute and administer the laws of the Ho-Chunk Nation;
(e) To nominate the Executive Directors of each Department subject to confirmation by the Legislature except that if a confirmation vote is not taken by the Legislature within ninety (90) days the nomination shall be deemed confirmed;
(f) To remove an Executive Director of a Department or to reassign an Executive Director to another position;
(g) To select and hire personnel in accordance with applicable law;
CONFIRMATION PROCESS OF EXECUTIVE DIRECTORS FOR THE HO-CHUNK NATION ACT OF 1996, HCC96-005
Chapter 2 Definitions.
For purposes of this Act, the following definitions shall apply:
Section 304. “Executive Director” means the person nominated by the President and confirmed by the Legislature to serve as director of a particular executive department of the Ho-Chunk Nation (Justice, Treasury, Administration, Housing, Business, Health, Social Services, Education, Labor, and Personnel and any other departments deemed necessary by the Legislature).
Section 306. “Nominee” means the individual nominated by the President to serve as Executive Director of any department of the Ho-Chunk Nation.
Chapter 3, Nomination Process and Investigation.
Section 301. The President shall submit to the Legislature, within forty-five (45) days after the election results are certified his/her nominees for all Executive Director positions. The President shall include with his nomination letter to the Legislature a completed resume of his/her Nominee, a list of at least three (3) personal and/or business references of the Nominee, and a signed release form indication (sic) the Nominee’s consent to a background investigation. Section 305 In the event that an Executive Director vacancy occurs for any *179 reason, the President must nominate a new Nominee to fill an Executive Director position within fourteen (14) days of such vacancy. Upon nomination of a Nominee by the President, the Legislature must confirm or deny the Nominee within ninety (90) days after the submit-tal of said nomination or it shall be deemed confirmed.
Section 306. Any nominee proposed by the President shall, at a minimum, meet the qualifications for employment contained in the job description approved by the Legislature.
Chapter 4
Section 403. The President, pursuant to Article VI, Section 2(e) of the Constitution of the Ho-Chunk Nation, must nominate all Executive Directors. Confirmation by the Legislature of a Nominee during a previous presidential administration shall have no force or effect in subsequent administrations nor in the event that an individual is reelected as President shall previous nominations or appointments remain in force or effect.
Chapter 5. Severability
Section 501. If any provisions of this law shall in the future be declared invalid by the Judiciary, the invalid provision or provisions shall be severed and the remaining provisions shall continue in full force and effect.
Chapter 6. Effective Date
Section 601. This Act shall take effect 45 days after adoption by the Legislature.
FINDINGS OF FACT
1.Clarence Pettibone is the President pro tempore of the Ho-Chunk Nation until the General Election in June 2001 results in a successor being elected and sworn in to fill the unexpired term of former President Jacob Lonetree.
2. The named defendants are individual members of the HCN Legislature representing the five electoral districts: Robert Mudd, Elliot Garvin and Isaac Greyhair represent Area I (Black River Falls-Dells Dam-Eau Clare); Wade Blaekdeer represents Area II (Tomah-LaCrosse); Dallas Whitewing represents Area III (Witten-berg), Gerald Cleveland, Kevin Greengrass and Myrna Thompson represent Area IV (Wisconsin Dells-Wisconsin Rapids), and Kathyleen Lonetree-Whiterabbit, Karen Martin and Sharyn W'hiterabbit represent Area V, the At large area (outside the 14 counties).
3. Jacob Lonetree was elected president to fill the unexpired term of Chloris A. Lowe Jr. in 1997. He filled out that term and was elected to his own term in June 1999 to serve four years. However, Mr. Lonetree was voted out for various claims of “malfeasance” at the General Council, which met on October 21, 2000. See HCN Const. Art. IX, § 2
4. Clarence Pettibone was the sitting Vice President of the Ho-Chunk Nation as elected by his fellow Legislators at the time of Jacob Lonetree’s removal as President. Pursuant to the HCN Constitution he stepped up to be the “President pro tempore” until the next general election, presently scheduled for June 2001. HCN Const. Aet IX, § 9. Once a successor is sworn in Mr. Pettibone’s term as President pro tempore shall expire as a matter of law and he mil reassume his seat as a Legislator from Area I and supplant his temporary successor Robert Mudd whose term of office shall expire upon Mr. Petti-bone’s resumption of his Legislative seat.
5. In the recent election of April 28, 2001, Mr. Pettibone did not stand for election as President and so shall not continue *180 in that office once a successor is sworn in four Wednesdays after the election results are certified. HCN Const. Art. VIII, § 8.
6. The present General Election is scheduled for Tuesday June 5, 2001 and in accordance with the HCN Constitution, barring a successful election challenge, the successor to Mr. Pettibone will be sworn into office four Wednesdays after the HCN Election Board certifies the election results as correct. Id.
7. The Court takes judicial notice of the fact that the two remaining candidates for President are Robert Mudd and Troy Swallow.
8. After taking office, President pro tempore Clarence Pettibone removed the Executive Directors of Treasury, Housing, Personnel and Social Services. He later nominated persons to fill those positions for those Departments and to two other departments, Business and Education, which were staffed by interim directors when he assumed office. The parties do not dispute these nominations or confirmations.
9. The President pro tempore has not taken any action to remove or renominate the existing Executive Directors of Administration, Heritage Preservation, Veterans Affairs, Justice, Health or Labor. Each of the Executive Directors in office on the date the President pro tempore took office continues in office since October 21, 2000 and continues to discharge the duties of those positions as before. All of these Executive Directors had been nominated by former President Jacob Lonetree and had been confirmed by the HCN Legislature sitting at the time of the confirmation.
10. Each of the existing Executive Directors was appointed following Jacob Lonetree’s election in 1999 and confirmed on September 1, 2000 with the exception of the Executive Director of Administration who was nominated to fill a vacancy and was confirmed in April 4, 2000.
11. During the course of several Legislative meetings held in December 2000 and January 2001 several Legislators questioned whether the President pro tempore was obligated to renominate the existing Executive Directors and seek Legislative confirmation of their appointment to the position they hold. After debate concerning the applicable legal requirements'at those Legislative sessions, the Legislature and President pro tempore agreed to resolve theft disagreement through a petition for declaratory judgment from the Nation’s Trial Court. By Motion duly made and adopted at the meeting of January 23, 2001, the Legislature waived the ethical conflict of the Department of Justice to appear on behalf of the President pro tempore in the matter and this suit was commenced.
DECISION
In this case the Executive and Legislative branch seek a judicial resolution over where the boundary lies between them in a separation of powers issue. The issue is whether the President pro tem-pore is required to renominate Executive Directors so that the Legislature may consider whether the Executive Directors are qualified for the posts that each was already found qualified for a scant year before. The Legislature seeks a declaration that the President “pro tempore” like any other new President must nominate and seek confirmation of all Executive Directors even if previously approved by the Legislature. In the Ho-Chunk Nation in an ordinary situation a President is elected, nominates Executive Directors to a cabinet to run the various departments and the Executive Directors so nominated are subject to confirmation by the HCN Legislature.
*181 This is not an ordinary case. There has been no election. The General Council removed the serving President in October 2000. See HCN Const. Art. IX. § 2. The Vice President by operation of the Constitution’s successor clause is elevated to the temporary post of President “pro tem-pore” until there is an election to fill that post, or if the amount of time until the next election is less than three months, the office of President remains vacant until the next election. HCN Const. Art. IX, § 9. Here there was sufficient time remaining to require the Vice President to become the President “pro tempore,” i.e. eight (8) months. Id. § 9(b). Moreover, this has been the second removal of a Ho-Chunk President since the adoption of the HCN Constitution in 1994 and if history is a likely judge may not be the last time this procedure is used.
Therefore, the question of how the succession after a President’s removal should work is an important question that needs to be answered in HCN Constitutional jurisprudence. It will guide future administrations and Legislatures on how the procedure should operate. The Legislature here argues that they have required the renomination of Executive Directors by law. They point to the Confirmation Process Of Executive Directors For The Ho-Chunk Nation Act of 1996, § 403 for the proposition that all Presidents must nominate Executive Directors even when they are reelected. The Legislature cites the following language from that Act, “Confirmation by the Legislature of a Nominee during a previous presidential administration shall have no force or effect in subsequent administrations nor in the even that an individual is reelected as President shall previous nominations or appointments remain in force or effect.” The Legislature points out that the legislature language speaks of “subsequent administrations” for its position that a President pro tempore must renominate Executive Directors held over from the removed President’s cabinet. It argues that there must be a new administration because it is headed by a different individual. Therefore, it is a subsequent administration and renomination of existing Executive Directors must follow.
The Court does not agree with this construction for a number of reasons. First the Court notes that an administration is one that is constituted after an election. That is the ordinaiy construction given administration in all other contexts. This is further supported by the fact that in some situations, ie., when the President is removed within three months of a previously scheduled General Election there is no President pro tempore at all. The Office of the President remains vacant pursuant to HCN Const. Art. IX, § 9(C). This is a period when there would be a subsequent administration according to the Legislature but there is no one to renominate Executive Directors.
This supports the President pro tern-pore’s position that his is not really a “subsequent administration” within the meaning of the Confirmation of Executive Director’s Act of 1996 § 403 because the President pro tempore is merely a caretaker of the previous administration until the electorate can install a successor. The previous administration would continue of necessity under the scenario with less than three months to the general election. Without someone to remove Executive Directors pursuant to HCN Const. Art. VI, § 2(f) those Executive Directors would continue in office until a new President was elected. Any other construction would have the government fall into chaos because there would be no one to run things or make important day to day decisions to keep the government going until the next election.
*182 The Court also finds persuasive the argument that an administration normally begins after an election. Indeed, this appears to be the Legislative understanding of this process as reflected in the Confirmation of Executive Directors Act of 1996, § 301. “The President shall submit to the Legislature, within forty-five (45) days after the election results are certified his/her nominees for all Executive Director positions.” It is during an election where a candidate for President sets forth his/her vision and plan for the Nation if they are elected. The electorate votes in part based on the plan or vision set forth by the candidates. The President then begins to enact his/her plan upon their election by nominating people they feel are compatible with that vision or plan to be Executive Directors. At that point the Constitution gives the Legislature the right to confirm the Executive Directors. The Legislature also has a say when a vacancy occurs in an Executive Director position. Confirmation of Executive Director’s Act of 1996, § 305. This was done in this case. President pro tempore Pettibone filled several vacant Executive Director positions he inherited when he assumed office. These nominations were confirmed by the HCN Legislature.
In contrast, after a removal, the Vice President, now the President pro tempore, is a caretaker who shepards the administration crippled by the loss of its head until the next Election occurs and a new President is chosen by the electorate. A President pro tempore is always a Legislator elected from just one district and has no mandate, plan or vision validated by the entire electorate. He/she is merely a caretaker. He/she resumes his or her seat in the Legislature after having completed his/ her duties. He as President pro tempore may chose to remove Executive Directors and seek the appointment of others. Nothing in the Constitution clearly requires that he resubmit for confirmation prior confirmed Executive Directors.
What is clear is that the President, and the President alone, has the authority to unilaterally remove Executive Directors. See Dan Sine v. Jacob Lonetree, CV 97-143 (HCN Tr. Ct., Aug. 3, 1998)(Executive Directors as political employees have no protections for good cause removal); see also HCN Const., Art. VI, § 2(f)(The President shall have the power “to remove an Executive Director of a Department ... ”). This is not a power given to the Legislative Branch. The powers given to one branch of government may not be exercised by another branch. HCN Const. Art. III., § 3. “No branch of the government shall exercise the powers or functions delegated to another Branch.” Indeed, the Legislative power to remove and punish is further limited by the bill of attainder clause. HCN Const. Art. X. § (1)(a)(9).
It therefore appears that a construction of Section 403 of the Confirmation of Executive Directors Act of 1996 which finds that a President pro tempore who merely acts as a caretaker of an administration until the next election is not a “subsequent administration” within the meaning of Section 403 avoids a finding of unconstitutionality. This comports with the cannon of construction of statutes “should be construed to avoid constitutional questions, unless such construction is plainly contrary to the intent of the legislature.” Michelle M. Ferguson v. HCN Insurance Review Commission/Division of Risk Management, CV 99-20 Judgment (HCN Tr. Ct. Aug. 12, 1999) aff'd SU 99-10 (HCN S.Ct. Nov. 15, 1999) citing Coalition for Fair Government II v. Chloris A. Lowe Jr. et. al., CV 96-22 at 19 (HCN Tr. Ct. May 20, 1996) aff'd (HCN S.Ct. July 1, 1996).
*183 To construe Section 403 as the Legislature urges would be granting it a power not enumerated in the Constitution, i.e. to force the removal of Executive Directors, which displease them. That would be the effect of forcing the President pro tempore to renominate already confirmed Executive Directors, who if voted down would be forced out of office. This achieves in an indirect manner that which the Legislature is not entitled, the power to remove Executive Directors.
Nor does the construction given today mean that the Legislature is without power to deal with an Executive Director, which it feels is not executing the laws he or she was delegated to administer. The Legislature retains the power “to review any action taken by virtue of such delegated power.” HCN Const. Art. V., § 2(b).
Conclusion
The Court finds that a President pro tempore is not a “subsequent administration” within the meaning of Confirmation of Executive Directors Act of 1996, § 403 and is therefore not required to renominate previously confirmed Executive Directors to the Legislature for confirmation.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief f rom Judgement or Order. Otherwise, all parties have the right to appeal a final judgment or order of the Trial Court. If either party is dissatisfied with the decision of this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days from the date this Court renders such final judgment or order. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice of Appeal must explain the reason the party appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must conform with the requirements established by the Ho-Chunk Supreme Court as stated in the Ho-Chunk Nation Rules of Appellate Procedure.
IT IS SO ORDERED this June 14, 2007 from within the sovereign lands of the Ho-Chunk Nation at Black River Falls, WI 54615.